MINNIE ADAMS v. STATE.

No. A-6077.   Opinion Filed April 28, 1928.
(266 Pac. 790.)

Daniels & Stalcup, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Ottawa county for the crime of murder, and was sentenced to a term of life imprisonment in the state penitentiary. A state of facts about as follows appears:

Defendant, a woman about 44 years of age, was married to the deceased, who was about 24 years of age. Deceased had left defendant in the state of Arkansas and was working at the mines at Picher, in Ottawa county. Defendant joined him there, and they had a room at a hotel; she was jealous and suspected deceased of associating with other women. On the day after she joined him at Picher and three days before the homicide she procured at a pawnshop the pistol with which the homicide was committed. Deceased was shot while in bed undressed; the bullet entering behind the right ear and coming out near the left temple. He died in a few minutes, without making any statement. At the time of the shooting defendant was fully dressed, and immediately after came out of the room

with the pistol in her hand, told some persons that she had shot her husband, and for them to go and see him. She went to the room with them and was arrested there.

The defense interposed is self-defense and a plea of insanity. The evidence of self-defense is not very substantial, although the court instructed fully on that point. The only material evidence of insanity is that of defendant, who testified that at one time she had been confined in an insane asylum in the state of Tennessee, and that she "just walked away." The evidence did not disclose the date of this incarceration. She further testified that at the time she shot her husband they had a quarrel, in which he threatened her, and slapped her, and knocked her down, and showed her an obscene picture; that she lost control of herself, and did not remember anything until the next morning. There is very little conflict in the evidence. Few exceptions were taken in the course of the trial, and only one assignment of error is argued. That is error of the court in his instructions to the jury.

The court gave five instructions upon the subject of insanity, being Nos. 14, 15, 16, 17, and 20 of the court's charge. No. 14 is in substance that the plea of insanity is interposed, and evidence has been introduced tending to indicate that defendant was of unsound mind, and that a person is capable of committing a crime, unless he be an idiot, lunatic, insane, or of unsound mind to such an extent as to temporarily or partially deprive him of reason, so that at the time of the commission of an act he is incapable of knowing its wrongfulness.

No. 15 is in substance that, when a plea of insanity is interposed, and there is evidence sufficient to raise a reasonable doubt in the minds of the jury as to the sanity of the defendant, whether by the state or the defendant, then the burden is on the state to prove sanity beyond a reasonable doubt.

No. 16 defines sanity, and informs the jury they must find from the evidence beyond a reasonable doubt that at the time of the commission of the alleged offense the defendant had understanding sufficient to distinguish right from wrong, or to be conscious of the commission of the act, or to realize its wrongfulness.

No. 17 informs the jury that they should consider the acts of the defendant at, prior to, and since the commission of the act charged, as shown by the evidence, in determining whether she was sane or insane at the time of its commission.

No. 20 told the jury what facts must be found beyond a reasonable doubt in order to warrant a verdict of guilty. Touching the matter of insanity it is as follows:

"* * * And you further find and believe from the same degree of proof that said defendant was at said time sane, and not insane, as in these instructions defined elsewhere, **if during the trial of the cause a reasonable doubt in your minds has arisen as to the defendant's sanity from the evidence offered by either the state or the defendant** (emphasis ours), then you should find the defendant guilty of murder, unless you find that the act of said defendant was justified, as in these instructions elsewhere defined. If you do not so find and believe, or you have a reasonable doubt upon and concerning any of the matters and things mentioned, referred to, and set out in this instruction, then you should acquit the defendant."

Defendant insists that that part of the instruction emphasized takes away from defendant the defense of insanity, and left only self-defense. We do not so read the instruction. It is somewhat involved, and not happily phrased, but, taken in connection with other instructions, it simply means that if, in the course of the trial, evidence offered either by the state or defendant has raised a reasonable doubt in the minds of the jury of the sanity of defendant at the time of the homicide, then the state must prove defendant sane beyond a reasonable doubt, and unless

they have done so they should return a verdict acquitting her. This is the law. The presumption that defendant is sane, a presumption which applies to all persons accused of crime, prevails until evidence, either on the part of the state or the defendant, sufficient to raise a reasonable doubt of her sanity has been introduced; then the burden is on the state to prove her sanity beyond a reasonable doubt. Roe v. State, 17 Okla. Cr. 587, 191 P. 1048; McNeill v. State, 18 Okla. Cr. 1, 192 P. 256.

It appears to us that, under the record, the jury could have arrived at no other verdict than they did. No prejudicial error requiring a reversal appears in the record.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.