# TOMMY ADAMS v. STATE.

No. A-7559. Opinion Filed Oct. 11, 1930.
Rehearing Denied Nov. 8, 1930.
(292 Pac. 385.)

Frank Hickman and F. A. Peek, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county of the crime of manslaughter in the first degree, and sentenced to serve 99 years in the state penitentiary.

The defendant in his brief says:

"This was an unusual case.   There was not a single fact or circumstance connected with the homicide in dispute excepting the defendant's mental responsibility."

The killing being admitted, the cause must be affirmed, unless the errors of law complained of by the defendant are sufficient to require a reversal.   Section 2719, C. O. S. 1921, provides:

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

The defendant claims that he was insane at the time the homicide was committed, and offered evidence in support of such claim.

The first contention of defendant's counsel is that the evidence in the case fairly established that the defendant at the time of the commission of the crime was so insane as not to know the difference between right and wrong, and to be incapable of committing the offense. There is a sharp conflict in the evidence. The evidence of the state, the physical facts, and the circumstances of the case are that the defendant was sane at the time of the commission of the homicide. The evidence of the defendant and his witnesses was that he was insane at that time. This was the single question of fact to be determined by the jury.

This court has repeatedly held that the jury are the exclusive judges of the weight of the evidence and the credibility of the witnesses; and that if there is a clear conflict in the evidence or it is such that different inferences can properly be drawn from it, its determination will not be interfered with unless it is clearly against the weight of the evidence or appears to have been influenced by passion or prejudice. Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277; Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405; Burrows v. State, 42 Okla. Cr. 256, 277 Pac. 685.

Defendant contends that the court erred in admitting incompetent evidence on the part of the state and in rejecting competent evidence offered by the defendant, and that such error was of such a flagrant nature as to require a reversal of the case.

The rule is that a conviction will not be reversed on account of improper admission or exclusion of evidence, unless it appears from an examination of the whole record that there has probably been a miscarriage of justice, or that there is a substantial violation of some constitutional or statutory rights of the accused. Section 2822,

C. O. S. 1921; Brixey v. State, 42 Okla. Cr. 213, 275 Pac 655.

Defendant complains that he was not permitted to ask Dr. Adams, testifying for the state, as to what it was which had cured the defendant between the time he had been adjudged insane in California and the time of the homicide. Medical science having no known specific for any disease, the question was impossible of answer. There was no evidence before the court that the defendant had been cured, that not being the issue in the case.

Defendant further contends that the court erred in refusing to permit Dr. Adams to answer the question of whether or not he was appearing to testify for the state for a fee. An examination of the record discloses the following:

"Q. But you agreed, didn't you, doctor, with the county attorney for a fee, money consideration, to come down here and testify to this boy's sanity? A. I did not."

It thus appears that this contention is without merit.

An examination of the whole record discloses that the trial judge was attempting to speed up the trial and was trying to keep the examination and cross-examination of witnesses reasonably within that which was material in the case. There is nothing in the record to indicate any prejudice upon the part of the judge, and the admission and rejection of evidence complained of by the defendant was not such as to require a reversal of the case.

Defendant further contends that the court erred in refusing to permit him to introduce a photograph of himself taken when he was a boy, years ago, for comparison in showing a change in the defendant's physical appear-

ance. Just how this would be of any probative value in establishing the fact of insanity years afterward and at the time of the trial, we are unable to see. Defendant contends that it was admissible for the purpose of identification. Defendant's witnesses Mr. Peek, Mr. Roth, and Mr. Chandler had sworn that the defendant was the same person who had lived with them years before, and had fully established the fact of identity, so that the photograph for that purpose could only have been cumulative evidence. In many cases it is proper to permit the introduction of photographs, and the introduction might have been permitted in the case at bar, but the rejection of this, together with the other evidence complained of, does not constitute reversible error.

Defendant introduced in evidence a certified copy of the proceedings of the superior court of Inco county, state of California, showing that the defendant had been adjudged to be insane and had been committed to the Norwalk State Hospital, at Norwalk, Cal., and introduced evidence to show that the defendant was the same Tommy Adams who had been committed to this asylum as insane.

Defendant contends that the court erred in giving instruction No. 12, which reads as follows:

"You are instructed that the court has permitted an authenticated copy of a record from a superior court in the state of California of an adjudication in said court adjudging one Tommy Adams insane and his confinement in a lunatic asylum. In considering this evidence it will be your first duty to ascertain and determine whether the Tommy Adams mentioned in said authenticated copy is the Tommy Adams here on trial, and if you should decide that he is the same Tommy Adams here on trial, said evidence will not be considered by you as conclusive upon the question of his sanity at this time and in this case, but said record may be considered by you, along with the

other evidence in the case on the question of his sanity, and given by you such weight as you deem it entitled to receive."

Defendant contends that the court erred first in that part of the instruction which reads:

"In considering this evidence it will be your first duty to ascertain and determine whether the Tommy Adams mentioned in said authenticated copy is the Tommy Adams here on trial."

Certainly it was incumbent upon the defendant to prove that he was the same Tommy Adams who had been adjudged to be insane by the superior court of California. Defendant argues that this part of the instruction was calculated to raise a doubt in the minds of the jury as to the identity of the defendant.

The court evidently had in mind two things in this instruction; the first being that the jury must first find that the Tommy Adams on trial and the Tommy Adams adjudged insane were identical, and this was a fact necessary to be found by the jury; and next the jury were told that if they found the first fact to be true, the record of such finding of insanity was not conclusive proof of the insanity of defendant at the time the crime was committed, but could only be considered by the jury together with the other evidence in the case in determining the mental condition of the defendant at the time the homicide was committed.

Defendant also contends that this latter part of the instruction is incorrect, arguing that the defendant having once been adjudged insane, the presumption of law was that such insanity continued, and the burden was not upon the defendant but upon the state to establish the sanity of defendant.

In the case of People v. Prosser, 56 Cal. App. 454, 205 Pac. 869, that court said:

"Commitment to an insane asylum is not conclusive evidence of insanity, but is only evidence to be weighed by the jury, in a criminal prosecution."

In the case of Fetterley v. Randall et al., 92 Cal. App. 411, 268 Pac. 434, that court said:

"Proceeding before judge with advisory assistance of two physicians, under provisions of Pol. Code. § 2168 et seq., is a summary proceeding for purpose of determining mental condition of person charged with being insane, and does not constitute a conclusive judicial determination of sanity or insanity."

Certainly if the judgment finding the defendant insane by the superior court of California was not conclusive as to the mental condition of the defendant in that state, it cannot be said that it would be conclusive of his condition in this state.

In the case of People v. Prosser, 56 Cal. App. 454, 205 Pac. 869, 871, the Court of Appeals of that state said:

"The court committed no error in refusing to give the following instruction: 'You are instructed that if you find that defendant was committed to a state hospital in California as insane by the superior court of any county of California that the law presumes that defendant continues insane until such time as he was lawfully discharged from the state hospital or was legally adjudicated sane.' This instruction proceeds upon the mistaken assumption that such adjudication is conclusive evidence that the party was insane; whereas, it was only evidence to be weighed by the jury, and the effect of which was to be determined by them, but they were not in any wise concluded by the opinion of the medical examiners or by the judgment which declared appellant insane."

The rule laid down in this case was followed in Fetterley v. Randall, supra.

The general rule is stated in 32 C. J. p. 757, § 560:

"Prior Insanity. It has been held to be a sound general rule that insanity at any particular time, if shown to be habitual or permanent in its nature, may be presumed to have existed at a given prior time. But if the insanity shown to exist is merely intermittent and not permanent, it is held that no presumption of its existence at a given prior time arises."

Section 561, supra:

"General insanity admitted or once proved to exist, is presumed to continue, and if a recovery or lucid interval is alleged to have occurred, the burden to prove such allegation is on the person making it. * * * The rule above stated, that insanity once proved is presumed to continue, obtains only in cases of chronic or permanent nature. If insanity, admitted or proved, is only occasional or intermittent, the presumption of its continuance does not arise, and he who relies on such insanity proved at another time, must prove its existence also at the time alleged."

The evidence of the defendant at most does not establish permanent insanity, but only tends to establish insanity occasional or intermittent in its nature.

Dr. Smith, testifying for defendant, said that he was suffering from a phychosis, which means a disease of the mind. On cross-examination this witness, after having answered that he had observed the defendant that day, would only say that he was "mentally abnormal today."

Under the facts as developed by the evidence in the case and the authorities cited herein, the court did not err in giving instruction No. 12.

The defendant next contends that the court erred in instructions No. 6 and No. 7 in not assuming the defendant to be insane because of the adjudication in California. These instructions are the usual ones given where insanity is the defense and correctly state the law of the case.

Defendant next contends that the trial court erred in overruling his motion in arrest of judgment, after refusing to hear evidence to create a doubt of his sanity in the mind of the court at the time the judgment was to be pronounced.

Section 2867, C. O. S. 1921, provides:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

Section 2868, supra, provides:

"The trial of the cause or the pronouncing the judgment, as the case may be, must be suspended until the question of insanity is determined by the verdict of the jury."

Under section 2867, supra, the insanity of the defendant may be suggested at the time the case is called for trial. This court has held that it is reversible error, where a doubt of the sanity of the defendant at the time of the trial arises, to refuse to impanel a jury and determine the question of the mental capacity of the defendant to make his defense in the case. Marshall v. Territory, 2 Okla. Cr. 136, 101 Pac. 139. See also Ex parte Maas, 10 Okla. 302, 61 Pac. 1057.

In the case at bar no suggestion of defendant's insanity was made before the jury was impaneled, defend-

ant seeking only to establish his insanity at the time the homicide was committed.

In the trial of the case defendant may defend upon the ground that he was insane at the time the crime was committed and offer evidence in support of same. Where defendant introduces sufficient evidence to raise a reasonable doubt of his sanity, the burden then rests upon the state to establish defendant's sanity the same as any other fact in the case. By proper instructions the court submitted to the jury the question of defendant's sanity at the time of the commission of the offense, and the jury upon the evidence and under said instructions found the defendant guilty.

Under section 2867, supra, the defendant may raise the question of his sanity after verdict and before judgment is pronounced upon such verdict. In the case at bar the defendant's counsel suggested his insanity at the time he was called before the court for judgment and sentence, and offered to introduce evidence in support of the same. The trial court declined to hear any evidence upon such question and the defendant now predicates error in this court upon such ruling. There is a great difference between the hearing to be had upon the defendant's mental capacity to be put upon trial before the jury is impaneled, and the hearing provided for after verdict. The jury having found the defendant sane at the time the crime was committed and having returned a verdict of guilty against him, this last hearing demanded by the defendant and refused by the trial court was only for the purpose of determining whether the defendant should be committed to the asylum for the criminally insane until such time as he shall become sane, and then be committed to the penitentiary, or whether he shall be committed to the penitentiary in the first instance. The trial court should

have heard the evidence offered by the defendant, but failure to do so is not such an error as will require a reversal of the case.

Section 2822, C. O. S. 1921, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Section 2943, C. O. S. 1921, provides:

"Neither a departure from the form or mode prescribed in this chapter in respect to any pleadings or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right."

Section 2820, C. O. S. 1921, provides:

"The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court."

Under this section this court has broad power to control the proceedings after verdict in trial courts. See Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883; Sayers v. State, 10 Okla. Cr. 233, 135 Pac. 1073; Johnson v. State, 12 Okla. Cr. 260, 154 Pac. 1004; Caudill v. State, 9 Okla. 66, 130 Pac. 812; Barrett v State, 39 Okla. Cr. 50, 263 Pac. 166; White v. State, 42 Okla. Cr. 50, 275 Pac. 1067.

Where the proceedings after verdict are not in accordance with law, this court has power to remand the case with directions to the trial court to correct its record and render judgment in conformity with the verdict or to comply with any other statutory requirement prior to the rendition of the final judgment.

Under section 2867, C. O. S. 1921, it was the duty of the trial court when it was made to appear that the defendant was insane to hear evidence in support of such allegation, and if a doubt arose in the mind of the court it was its duty to impanel a jury to inquire into the defendant's sanity before pronouncing judgment.

It would serve no good purpose to reverse the case. The only question before the court and jury in the trial was the mental capacity of the defendant to commit the homicide. The jury heard the evidence of the defendant and the state on the question of defendant's mental capacity to commit the homicide, and, under proper instructions from the court, found the defendant guilty, and thus found him sane at the time the homicide was committed.

It is ordered by this court that said cause be remanded to the district court of Tulsa county, and that said court vacate and set aside the judgment rendered therein and proceed to hear evidence of the sanity of the defendant, and if such evidence creates a doubt in the mind of the court of his sanity, that a jury be impaneled as provided for in section 2867, and that the court proceed thereafter in accordance with this opinion.

For the reasons stated, the conviction is affirmed, and the cause remanded.

EDWARDS, P. J., and DAVENPORT, J., concur.