## HERMAN WEILAND v. STATE.

No. A-8906.   Oct. 11, 1935.
(50 Pac. [2d] 741.)

M. D. Hartsell and D. C. Shannon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.  Plaintiff in error, hereinafter called defendant, was convicted in the district court of Muskogee county of murder, and his punishment was fixed at death.

On the date charged defendant shot and killed one Roy Stretch.  Defendant had married the sister of deceased, but they were shortly divorced; later a child was

born, and defendant was ordered to pay $10 monthly for its support. He resented this, and at one time left the state to avoid payment, but was brought back by requisition, a hearing was had, and the payments were reduced to $5 per month. He had a feeling of ill will toward members of his wife's family. At the time of the killing he went to the home of his father-in-law, in the nighttime, armed with a shotgun. Roy Stretch, a youth of 17 years, opened the door, and without a word being spoken, defendant shot him, inflicting a wound from which he died in a few minutes. He fired three more shots in an attempt to shoot other members of the family. Defendant did not take the stand, and offered no testimony. The defense is insanity.

Defendant contends the opening statement of his counsel that he was insane at the time of the commission of the crime raised the question of defendant's present sanity, and that the court abused his discretion in not then trying the question of present sanity. The law providing for trials of the question of sanity, apart from the issue of the crime, goes only to present sanity. Sections 3106 and 3212, Okla. Stat. 1931. The opening statement of defendant's counsel on this point is:

"I believe the evidence will tend to show you, I could say beyond a reasonable doubt in your minds, that this defendant, at the time of that tragedy, or accident, when that fine young man lost his life, that it will show you that he was then not at himself, but was laboring under a mental strain or insanity, and was not competent to know what he was doing or the result and consequences of his act. I believe we will be fully able to show you gentlemen from the evidence that those were the conditions that existed at that time."

Nothing was said about the present sanity of defendant. The court was not apprised that defendant claimed he was not sane at the time of the trial. After the state

had presented its testimony and rested, defendant introduced some testimony which might be construed as indicating defendant was insane. This was rebutted. A verdict was then returned finding defendant guilty of murder and fixing his punishment at death. Before sentence defendant filed motion for a new trial, a motion in arrest of judgment, and a request for jury trial as to defendant's present sanity. The court overruled the motion for new trial, delayed sentence, and ordered a sanity trial. A jury was impaneled, trial of the present sanity of defendant had, at which numerous witnesses, some expert and some lay, testified. A verdict finding defendant sane was returned. The verdict on this question of fact, amply sustained by the evidence, will not be disturbed by this court. Section 3062, Okla. Stat. 1931.

Where a defendant pleads that at the time of the commission of a crime he was insane and therefore incapable of committing crime, it is not necessary that there be a determination of the present sanity of defendant. It is only where there is a suggestion to the court in some manner that raises a reasonable doubt in his mind of present sanity that it becomes the duty of the court to have a trial to determine that question. In the instant case, if counsel for defendant desired a trial of present sanity, he should have suggested such fact to the trial court by some showing by affidavit or otherwise. There is nothing of that kind in this record until after verdict and by motion in arrest of judgment. It follows the trial court committed no error in failing, on his own motion, to conduct a sanity trial prior to verdict. Marshall v. Territory, 2 Okla. Cr. 136, 101 Pac. 139; Signs v. State, 35 Okla. Cr. 340, 250 Pac. 938; Adams v. State, 40 Okla. Cr. 44, 266 Pac. 790; Adams v. State, 49 Okla. Cr. 94, 292 Pac. 385.

Defendant next argues the court erred in overruling motion for new trial on the ground of newly discovered evidence. The motion sets out the names of various witnesses who testified at the sanity trial of defendant's mental condition. He asserts this is entirely new and discovered since the trial, and that defendant and his counsel had no means of discovering such testimony before the trial. These witnesses, with one exception, were employees at the Veterans Hospital, at Muskogee, where defendant had worked for a long period of time; one of these witneses was the fiancee of defendant, whom he was to marry on the day following the homicide. She was present at the trial, advising defendant's counsel, and could have been used if he had desired. The slightest diligence in interrogating the employees of the hospital, prior to the trial, would have disclosed their testimony. It is not enough merely to allege that defendant used due diligence and did not know what the testimony of the witnesses would be, but facts constituting the diligence must be stated. Johnson v. State, 5 Okla. Cr. 1, 112 Pac. 760; Harper v. State, 7 Okla. Cr. 581, 124 Pac. 116; Ball v. State, 47 Okla. Cr. 145, 286 Pac. 808.

This court has uniformly held a motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and his ruling will not be disturbed unless there is a manifest showing of abuse of discretion. Hawkins v. State, 11 Okla. Cr. 73, 142 Pac. 1093; McKinney v. State, 18 Okla. Cr. 562, 196 Pac. 974; Campbell v. State, 37 Okla. Cr. 321, 258 Pac. 357.

Another assignment argued is that the court erred in overruling a motion for new trial on the question of present insanity. This is an issue of fact, and the verdict of

the jury is amply supported. There was no likelihood that, had the court granted a new trial, another jury would have arrived at a different conclusion.

Some contention is made the court erred in the exclusion of testimony. This is directed to the offer of opinion by lay witnesses of defendant's insanity. The court evidently excluded the testimony in an instance or two, on the theory the witness was not shown to be qualified by observation, or that the observation and opinion were referred to a time too remote. There is no merit in this contention.

The trial of the question of present sanity is in the nature of a special proceeding not involving any question of guilt or innocence, but a collateral issue. The court here followed the civil procedure, that is, he ruled and instructed that the burden was on the defendant on that issue, and that he was entitled to the opening and closing in presenting his testimony and in the argument, and further ruled and instructed that nine of the jurors might return a verdict. His ruling was in conformity to the statute regulating the procedure in such cases. Sections 3214, 3215, Okla. Stat. 1931, as well as in conformity to the general rule, 16 C. J. p. 791, § 2017; 14 R. C. L., Insanity, § 59. Many authorities are cited in the voluminous note in case of Baughn v. State of Ga., 38 L. R. A. 577; Nobles v. Georgia, 168 U. S. 398, 18 S. Ct. 87, 42 L. Ed. 515.

No contention is made of any mitigation of the crime charged, but all are directed to the question of the mental condition of defendant. His mental condition at the time of the commission of the crime is determined, as a matter of fact, by the verdict of the jury. That issue was submitted under proper instructions. The defendant is

not concluded by the finding of his present sanity at the time of judgment and sentence, but as said in the case of Alder v. State, 53 Okla. Cr. 374, 12 Pac. (2d) 545, 547:

"There are ample safeguards in the law to fully protect from punishment one accused of crime who is not criminally responsible by reason of insanity. In this case a further inquisition may be had as to the mental condition of defendant upon a belief by the warden of the penitentiary of his insanity. Section 2788, Comp. St. 1921. The Governor, for his information, has the power to have an inquisition by alienists appointed by him to determine the sanity of the defendant."

Certainly the warden of the penitentiary, if he has any doubt of the mental condition of defendant, will make inquisition as provided by section 3174, Okla. Stat. 1931 (section 2788, C. O. S. 1921), and that the governor, if a question of the sanity of defendant is presented to him, will have inquisitions made for his guidance.

The case is affirmed.

The original time for execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Muskogee county be carried out by electrocution of the defendant on the 13th day of December, 1935.

DAVENPORT, P. J., and DOYLE, J., concur.