BEN JOHNSON v. STATE.

No. A-9984.   Jan. 21, 1942.

(121 P. 2d 625.)

John B. Ogden, Wilson Wallace, and R. Rhys Evans, all of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Ben Johnson, was charged by information in the district court of Carter county with the crime of rape in the first degree, was tried, convicted, and sentenced to serve 25 years in the State Penitentiary, and has appealed.

The first assignment of error is the contention that the trial court erred in refusing to grant to the defendant a sanity hearing as requested and set out by the laws of the State of Oklahoma.

The defendant was charged with rape of a twelve year old girl. Upon his arraignment, the following proceedings occurred:

"By Mr. Ogden, of counsel for defendant: Mr. Evans, Mr. Wallace and myself appear as counsel for the defendant. As your Honor knows, there are two methods of

raising this question of insanity. I don't think this defendant is sane now. We want to now ask that he be tried by a jury for his sanity. The statute states that if there is any question about his sanity, that you can't try an insane man for his crime. We now make the request that he be tried by a jury for his sanity at this time. By the Court: He has to be arraigned before you can find out what his plea is. By Mr. Ogden: If he is insane you can't arraign an insane man. Of course, the burden is upon us to show it. By the Court: Let me see the statute on that. By Mr. Ogden: I didn't bring the statute on that, but we will get it. * * * By the Court: The only question now before the court is as to whether or not he should be arraigned. This act you have been reading there was amended in 1935, 'Where in any criminal action * * * the defense of insanity is interposed', we will arraign him at this time. Let him be arraigned. By Mr. Ogden: We want to except to him being arraigned on the ground that he is incapable of being arraigned, or of knowing what to do. By the Court: Stand up, Ben Johnson, and listen to what they read to you. (At this point Mr. Bruce, county attorney, proceeded to read the Information in open court to the defendant.) By the Court: Now, then, Judge, I will hear you at this time. By Mr. Ogden: It is merely my contention from these authorities that when a man is charged with a crime, when it is called to the attention of the court, which may even be by a bystander, that the man is insane, we think under those circumstances that an insane person is incapable of being arraigned; therefore, we think that the proper procedure is to impanel a jury and try him for his sanity now, to determine as to whether or not he is insane, in this case that is the way we view it, that is what these authorities hold. By Mr. Bruce: It is our contention that by the verdict of the jury, they can so state by their verdict whether or not he is insane, according to 1935. By the Court: I will let him interpose at this time a plea of not guilty. By Mr. Ogden: We would rather the record show that under our contention he is incapable of pleading. By the Court: Let the record show that the

attorney for the defendant announces the defendant is incapable of pleading, and then the court interposes for and on his behalf a plea of not guilty. Then if he is entitled to an insanity hearing, he can get it then."

On September 24, 1940, when the cause came on regularly for trial, counsel for defendant filed a written request for a sanity hearing, which reads as follows:

"Comes now the above-named defendant, by and through his attorneys, and shows to this Honorable Court that the said defendant herein is mentally incompetent to make a rational defense in this cause and hereby requests this Honorable Court to grant to him a sanity hearing, before a jury, as required by law; and in support of said motion and request this defendant would show to this Honorable Court that the said defendant herein has been afflicted with pellagra and other diseases for a great number of years and with paralysis of the throat; and that the said paralysis has affected his mind and mental ability and that in addition thereto he has heredity insanity and has never been a normal human being and that his brother is now confined in the insane asylum in the State of Texas in the Rusk State Hospital at Rusk, Texas; and defendant now says through his attorneys that he is wholly incompetent and unable to make a rational defense in this cause; and that he now demands and requests that he be given a sanity hearing before a jury as by law provided."

In support of said request there is attached an affidavit of the wife of the defendant, as follows:

"Mrs. Jennie Johnson, of lawful age, after having first been duly sworn upon oath, says that she is the wife of the defendant herein and that she and the said defendant have been married for a period of almost nineteen (19) years; and that during February, 1940, the said defendant was complaining of serious trouble to his head and complaining of having dizzy spells and of being highly nervous; and that he went to the county health doctor as she is informed and verily believes, and that the county

health doctor examined him and that the county health doctor, at that time, was Dr. William A. Loy and that the said Dr. Loy recommended that he go to the University Hospital at Oklahoma City, Oklahoma, for examination and for treatment; and that the said defendant went to said hospital for examination and treatment and that upon his return, this affiant is informed and believes the said defendant was hit over the head by officers in Oklahoma City; and that since said time the said defendant herein was highly nervous and would get up in the night-time and run out into the dark and also would run from the house in the daytime and acted queer; and that this affiant believes and therefore states to the best of her knowledge and belief that the said defendant herein is mentally incompetent to make a rational defense in this cause; affiant further states that the said Ben Johnson has suffered in her opinion from mental disease and mental trouble for a great number of years; and that his brother, Ozie Johnson, is now confined in the state insane hospital of the State of Texas in the Rusk Hospital and has been there for a period of approximately 15 years."

When this request was presented to the court, counsel for defendant dictated a long statement into the record, reciting a personal belief that the defendant had hereditary insanity, directing the court's attention to the fact that the defendant's brother had been in the state insane asylum in Texas for years, and that by reason of various actions and statements in the presence of counsel that counsel was firmly of the opinion that' the defendant is insane, and asked the court to send the defendant to the state hospital at Norman, where he could be under observation of mental specialists.

The request of counsel that the defendant be sent to the state hospital for observation was denied, and the request for a sanity hearing was denied; and the defend-

ant, over objection and exception of his counsel, was forced to trial.

During the trial the state produced evidence showing without dispute that the defendant had committed the crime with which he stood charged. The only proof offered by the defendant was testimony from various persons, including two persons who purported to testify as expert alienists, that the defendant was of unsound mind.

To refute this evidence the state introduced a large number of witnesses who testified that the defendant in their opinion was sane and knew right from wrong at the time he committed the act.

Without any request from the defendant, the court on its own motion submitted instructions to the jury covering the theory of insanity as a defense, which instructions are in conformity with the decisions of this court in cases where a plea of not guilty by reason of insanity at the time of the commission of a crime is interposed.

Counsel for defendant contend that the court was confused between those cases where it is contended that the defendant cannot present a rational defense because of his present insanity, and those cases where a plea of not guilty is entered by reason of the insanity of the defendant at the time he committed the alleged offense; that in one instance, where it is contended that the defendant is presently insane, the defendant is entitled to a sanity hearing before his trial in the manner provided by law; and that in the other instance, the jury may determine, under proper instructions of the court, whether the defendant knew right from wrong as applied to the particular act, and knew and understood the nature and consequence of such act.

It is provided by sections 3211, 3212, and 3213, O. S. 1931, 22 Okla. St. Ann. §§ 1161, 1162, and 1163, as follows:

"An act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment, or punished for a public offense, while he or she, as the case may be, is insane * * * *"

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

"The trial of the cause or the pronouncing the judgment, as the case may be, must be suspended until the question of insanity is determined by the verdict of the jury."

Section 3211, supra, was amended in 1935, Laws 1935, p. 19, Senate Bill 55, § 1, to provide that where the defendant is acquitted on the ground that he was insane at the time of the commission of the crime charged, such person shall, if the jury returning such verdict state therein that they deem the discharge of said person dangerous to the public peace or safety, be by the trial court committed to one of the state's hospitals for insane, there to be held and kept as a patient until legally discharged therefrom.

This amendment, however, did not affect sections 3212 and 3213, supra, and they remain in force and effect the same as they were prior to the 1935 amendment.

These statutes have been before the court many times for construction, the most recent of these cases being

Tuggle v. State, 73 Okla. Cr. 208, 119 P. 2d 857, 858. In that case it is stated:

"If a doubt arises in the mind of the court as to the sanity of the defendant, he must order a jury to be empaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the sanity of the defendant, either before the trial or before judgment and sentence is pronounced * * *.

"This doubt may arise in the mind of the court upon application for a continuance, motion for a new trial, motion in arrest of judgment, by ex parte affidavit or declaration of a bystander, or the court of its own motion; and while the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of the defendant. He may also consider the fact that the question of insanity was never raised."

In the case of Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136, 1139, it is stated:

"The question of present sanity of an accused is directed first to the attention of the trial court. The applicable statutes are section 3212 et seq. and section 3106, Okla. Stat. 1931, 22 Okla. St. Ann. § 1162 et seq., and § 925. Under the procedure prescribed when an indictment or information is called for trial, or when, after conviction, the defendant is brought up for judgment, if a doubt arises in the mind of the court as to the present sanity of a defendant, the court must then order a trial of this question by a jury as a question of fact, as in a civil case or special proceeding. The proceeding is outlined in the sections of the statute referred to. If a claim coming from a reputable source, is made, either at the beginning of the trial or at the time for judgment and sentence, that a defendant is insane at the time, with a reasonable showing or tender of proof in support thereof,

it is the duty of the court to submit the question to a jury. * * *

"When the motion is made and supported by such a showing, then a legal doubt of defendant's sanity arises, and it is the duty of the trial court to impanel a jury and to try the issue. While a trial judge may personally have no doubt of defendant's sanity, yet if the motion and showing in support thereof is substantially as outlined, it is sufficient legally to raise a doubt. In such a case, a refusal to submit the issue to the jury is an abuse of discretion."

In the early case of Marshall v. Territory, 2 Okla. Cr. 136, 101 P. 139, the defendant filed a motion to arrest the judgment on the ground that the defendant was an insane person at the time of the trial and prior to the time of the trial, and supported this motion by an affidavit of one of the attorneys representing the defendant, which affidavit set out in detail several matters of fact on which the affiant based his opinion or belief that the defendant was then insane. The syllabus of this case reads:

"After a person is indicted, present sanity of such defendant is presumed to exist until it is called in question from a reputable source, on a sufficient and specific declaration to the contrary, or from observation by the court the defendant's present condition is such as to call in question his sanity, whereupon it becomes the duty of the court to impanel a jury to pass on the sanity of the defendant; and the jury, and not the court, should determine this question.

"The inquiry to be submitted to a jury, in a proceeding under section 5661, Wilson's Rev. & Ann. St. Okla. 1903, 22 Okla. St. Ann. § 1162, is: Whether the accused is mentally competent to make a rational defense, and it is not whether he is able to distinguish between right and wrong.

"It is immaterial how or in what manner the question of present sanity is presented to the court pending trial of a defendant under indictment. Whether it is by application for a continuance, motion for new trial, motion in arrest of judgment, by ex parte affidavit, or declaration of bystanders, or the court of its own motion. All that is required is that the court shall make a record that a doubt arises as to the sanity of the defendant, whereupon an order for impaneling a jury to determine the issue is imperative.

"If there exists in the mind of the court a doubt as to the sanity of the defendant, as expressed in the statute, means if the court has been advised from a reputable source—that is, if a statement is made to the court by credible person, or persons, under oath that the defendant is insane—a doubt is raised. While there is a judicial discretion left to the court to determine whether there exists in the mind of the court a doubt, nevertheless such discretion should not be arbitrarily exercised, and its positive declaration and statement, as above indicated, that the defendant is insane, necessarily presents a condition calling for investigation. The court may look to the source of information, the motive, opportunity, etc., of the party making it, but if the court denies the inquiry by a jury, it must do so under circumstances excluding all doubt of the truthfulness of the declaration that the defendant is insane. * * *"

In the body of the opinion it is stated:

"The court in its examination was seeking to ascertain the defendant's condition of mind relative to his ability to distinguish between right and wrong, and his ability to comprehend the nature and consequence of his act. This is not the question that is presented under a proceeding of this character. The proper question is whether the accused is mentally competent to make a rational defense, and it is not whether he is able to distinguish between right and wrong. This rule has been enunciated in the following cases:

" 'When an affidavit is made by a respectable person that a defendant charged with crime has become insane, a jury should be impaneled to try the issue of insanity before proceeding with the case, and this, though the party making the affidavit is unknown to those in attendance on court. * * * The question to be determined on the plea of present insanity is, Is the accused mentally competent to make a rational defense?' Guagando v. State, 41 Tex. 626.

"Under the California Code, practically the same as our own, the Supreme Court of the state has held:

" 'No plea of present insanity is required. If at any time during the proceedings in a criminal trial a doubt arises as to the sanity of the defendant, it is the duty of the court of its own motion to suspend further proceedings in the case until the question of sanity has been determined. * * * Counsel for defendant cannot waive an inquiry as to the question of the sanity of a defendant.' People v. Ah Ying, 42 Cal. 18. * * *

" 'If there exists in the mind of the court a doubt as to the sanity of the defendant, and this doubt arises at any time during the trial, it is the duty of the court to stop the trial, and have determined the sanity of the defendant before further proceeding.' People v. Lee Fook, 85 Cal. [300], 301, 24 P. 654.

"In this case, in determining the question to be inquired into, the court says:

" 'The question, however, is not whether he has become sane in every sense of the word, but whether he has become sane in the sense of the statute which requires the suspending of the proceedings in a criminal case whenever it is found that the defendant is presently insane.'

"In other words, if there is a difference between the medical view of insanity and the view upon which the statute is founded, the question of sanity or insanity is to be determined with reference to the latter as contradistinguished to the former view. The case further holds:

" 'That all books, treaties, and decisions on the subject show that the true and only reason why an insane person should not be tried is that he is disabled by the act of God to make a just defense if he has one. * * * If, therefore, a person arraigned for a crime is capable of understanding the nature and object of the proceeding against him, if he rightfully comprehends his own conduct in reference to such proceeding, and can conduct his defense in a rational manner, he is, for all purposes of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound.'

"On the same subject, and to the same effect, is the case of Freeman v. People, 4 Denio, N. Y., 9, 47 Am. Dec. 216. And also the case of Youtsey v. United States, [6 Cir.], 97 F. 937, 38 C. C. A. 562, holds as follows:

" 'The question whether a defendant charged with a criminal offense is in a fit condition mentally to be placed on trial may be raised at any time and in any appropriate manner, and the fact that the objection was taken in an application for continuance, which is also based on other grounds, does not relieve the court of the duty to give the question of his mental soundness due consideration and try it in some appropriate form or proceeding; * * * that if it appear after arraignment, and before trial, that the prisoner is probably not capable of making a rational defense, the proceedings should stop until the sanity of the prisoner is determined or restored.'

"Again, in the same case, the court holds:

" 'Assuming, as we shall, that no duty rested upon the court to impanel a jury (court must impanel a jury in this state) to inquire whether the accused was in truth incapable of understanding the proceedings, and intelligently advising with his counsel as to his defense, and that it was optional with the court to call a jury, or resort to any other special mode of aiding his judgment, it was nevertheless his duty to consider and determine the matter judicially.'

"Under our law, if a doubt arises as to the sanity of the defendant, the court must order a jury, and if the facts

presented to the court are such as to raise a doubt as to the sanity—that is, if there are statements under oath of a credible person, or persons, that the defendant is insane—a doubt is raised, because if the statements are true, the man is insane, and a jury must inquire into the facts as to the truthfulness of the alleged fact of insanity. It is to be observed that it is not a discretion on the part of the court, under our statute, to direct the calling of a jury. The only contingency is, Does a doubt arise? This means, has information come to the court through a proper channel, from a proper source or party—that is, during trial—and from a credible and trustworthy source information is brought to the court that the defendant is insane, or if from personal inspection or observation of the court such probable condition of the defendant is made known to the court, then the law requires that a jury should be impaneled, who shall inquire into the mental condition of the defendant."

In the case of Signs v. State, 35 Okla. Cr. 340, 250 P. 938, 941, counsel for defendant filed an affidavit setting out he believed the defendant insane and not in a mental condition to make a defense. The court thereupon called a jury for the trial of the sanity of the defendant. This jury was unable to reach a verdict and was discharged. By agreement of counsel, case was continued for about three months, when the case was again called for trial; no further suggestion of insanity was made; without objection on the part of counsel, the trial proceeded, resulting in a verdict of guilty. In the opinion it is stated:

"The court properly impaneled a jury, which failed to agree and was discharged. Then, without determining the question, the court put the defendant on trial, which proceeding, we think, was contrary to the express terms of section 2868, supra [sec. 3213, 22 Okla. St. Ann. § 1163, supra]. It is true that counsel for defendant announced ready for trial and did not further request that the ques-

tion of the present sanity be submitted to the jury. Counsel for defendant could not waive this question."

In the same opinion it is further stated:

"Doubt once having arisen in the mind of the court, it was necessary that the question of sanity be determined. The failure to so determine this question before proceeding with the trial is reversible error."

See, also, Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205; Weiland v. State, 58 Okla. Cr. 108, 50 P. 2d 741; Adams v. State, 49 Okla. Cr. 94, 292 P. 385; Adair v. State, 6 Okla. Cr. 284, 118 P. 416, 44 L. R. A., N. S., 119.

In the instant case, after the verdict had been reached, a motion for a new trial was filed; and in the hearing on the motion for a new trial, counsel for defendant again asked the court for a sanity hearing, at which time the record disclosed the following occurred:

"By the Court: All right, I believe I will give you one before I pronounce sentence on him, I will have a jury in here, let's see, what date will you be ready? By the Court: How about Friday the 4th. By Mr. Ogden: I think there is something, if the court please, I wouldn't be able right now to state. I would suggest you set the motion for new trial on the 4th also, but if the court please, I would suggest that if it would be agreeable to Your Honor, since you are going to have a civil docket— (Interrupted) By the Court: No, I am going to give him a hearing, you wanted one, I am going to set this for hearing Monday, October 7th, at 9 o'clock. By Mr. Ogden: Would you let the record show that we except to the setting of this on one particular docket, it would lend to the seriousness of the case. By the Court: You wanted an insanity hearing, do you except to the court setting it? By Mr. Ogden: No, sir, but I thought it would come up on the regular docket. By the Court: I will set it for Monday the 7th. By Mr. Ogden: All right, sir, thank you."

Later the court overruled the motion for a new trial and denied the further request for a sanity hearing, at which time he dictated the following statement into the record:

"By the Court: As to his plea of insanity, there wasn't a line of testimony even to raise a suspicion or reasonable doubt as to his sanity, his wife filed an affidavit on the date of the trial, the law says the court has a right to look at the source of the information. The jury found no merit in it, the truth of the matter is the evidence didn't warrant the giving of an insanity instruction, but I gave it anyway, every witness who knew him for 15 or 20 years testified he knew right from wrong, counsel was so insistent that I thought I might give him a hearing on that even now, but after reflection on the testimony, the court has concluded there wasn't any testimony to raise a suspicion of his sanity. I have known him for something like 20 years. The officers observed him in the jail ever since he has been in there. I look for the source of these matters, nobody but his wife thought him insane, counsel of course argued he was insane because he got out within a half a mile of the sheriff's home and committed this act, the evidence showed this was in a secluded spot where he had preparations made for such act. I never knew that evidence of this nature would give a suspicion that this man was insane, I think the hearing would be a waste of time."

The question now presented to this court is whether there was a sufficient showing to raise a legal doubt of defendant's sanity so as to require the court to impanel a jury to determine this question. It should be borne in mind that counsel for defendant raised this issue at their very earliest opportunity at the arraignment of the defendant, some six weeks before the date of the commencement of his trial, and again raised the question by proper motion, supported by an affidavit of the defendant's wife and statement of his counsel as to certain acts of the de-

fendant, together with counsel's expressed personal opinion that defendant was insane and with the fact that he had a brother in the asylum.

We are satisfied that the trial judge, personally, had no doubt of defendant's sanity; yet the motion and affidavit, together with the statement of counsel, are sufficient to legally raise a doubt.

Defendant's counsel is a man of high standing among the members of the Bar of this state; he is a former district judge; his personal opinion that defendant was insane, based upon the contact he had with him in attempting preparation for trial, would certainly be considered an opinion from a credible source and, under the authorities above cited, was of such a character as to raise a legal doubt of defendant's sanity. In the statement of counsel it is pointed out that Dr. Loy, the physician who had been treating defendant for his ailment, was absent from the city and unable to give his testimony to support the statement of counsel and defendant's wife.

It is our opinion that the court abused its discretion in refusing to impanel a jury and submit the issue of present insanity for determination prior to the time of the trial of the defendant, in accordance with the request of his counsel.

There are many other assignments presented on behalf of the defendant, only two of which are of sufficient merit to require discussion. Both of these assignments concern the admissibility of certain evidence.

The court admitted evidence by officers that they had gone to the defendant's house and found a still and alcoholic beverages in the basement of the house. The court erred in admitting this evidence, as it is fundamental that the state cannot show that the accused has committed

other crimes so as to force a man to stand trial for two crimes which are wholly unconnected.

In Hall v. State, 67 Okla. Cr. 330, 93 P. 2d 1107, 1108, it is stated:

"In criminal prosecutions, involving sexual crimes, it is not competent or permissible to show an evil disposition inclining defendant toward that particular crime, by acts totally disassociated with, and far remote in time from, the act of which he is accused, and against an entirely different female. It is utterly repugnant to fairness and justice to accuse a person with the perpetration of a specific and definite crime, and then make that a pretext for trying him, without notice, for another alleged offense against which he is unprepared to defend, thereby producing a prejudice and bias against him in the minds of the jury."

This evidence was admitted by the court, over the strenuous objection of the counsel for defendant, on the theory that if it could be shown that the defendant was operating a still in violation of law the evidence would tend to show that the defendant knew right from wrong. Even under this theory the state did not show that the defendant put up the still or had any knowledge that it existed at the time testimony of officers showed that they found the still and whisky in the basement of defendant's house, which was at a time when defendant was in jail upon the charge of rape, for which he stood trial. No charge of possession of these implements was ever filed against the defendant. Regardless of this, however, we are firmly convinced that upon a retrial of this case, this evidence should be eliminated.

The defendant further contends that the court erred in refusing to permit the introduction of the original petition in the lawsuit filed by the defendant against the Santa Fe Railway Company for personal injuries, wherein

the petition sets out that the defendant was struck over the head and knocked unconscious by a blackjack held by a railroad policeman.

We think the court ruled correctly in refusing to admit this petition in evidence. It could be nothing more than a self-serving declaration, and is wholly inadmissible.

The defendant had evidence of witnesses who personally knew of the injury sustained by the defendant, which the court properly admitted on the theory that the blow received by defendant had affected his mentality. The court ruled properly, however, in excluding this self-serving petition filed by the defendant.

For the reasons hereinabove stated, the judgment of the district court of Carter county is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

BAREFOOT, P. J., and DOYLE, J., concur.