## BERWICK v. STATE.

No. A-11297.   March 21, 1951.

(229 P. 2d 604.)

6

Rutherford Brett, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J. The plaintiff in error, Richard Neil Berwick, hereinafter referred to as defendant, was charged by information filed in the district court of Oklahoma county with the crime of robbery of Shirley Thomas Moore, by force and fear; was tried to a jury, convicted, with punishment left to the court, who assessed the penalty at 25 years confinement in the penitentiary.

Defendants' petition for reversal of the conviction as set forth in brief on appeal was so strong that the Attorney General was unable to answer the legal propositions raised, but was content with a recital of the facts, and this practically amounts to a confession of error.

Defendant argues the ten specifications of error interposed in petition in error under two propositions set out in brief, and being:

"I. If a claim coming from reputable source is made at the beginning of the trial, or at the time of judgment and sentence, that the defendant is insane at the time, with reasonable showing or tender of proof in support thereof, it is the duty of the court to submit the question of insanity at the time of trial to a jury.

"II. When a doubt is raised as to the sanity of the defendant, counsel for the defendant cannot waive the right of the defendant to an inquiry as to defendant's present insanity."

The record discloses that the information was filed on January 13, 1949; that on January 14th defendant appeared in court for arraignment, waived reading of the information and entered his plea of not guilty, and that thereafter, on January 24th, a "petition" signed and verified by Marie Fuller, mother of defendant, was filed, in which petition it was stated that defendant, while in military service in Japan, had been injured in a fight; that he had been struck on the head with a piece of iron, was seriously hurt and had been hospitalized for a considerable time; that since receiving said injuries defendant's mind had been seriously impaired; that he had become a kleptomaniac; that he had committed thefts and one violation of law after another, and that he was not mentally responsible.

The petition prayed that defendant be given a trial by jury to determine the question of present sanity. Under date of February 2, 1949, the district court made an order directing that defendant be taken to the office or sanitorium of Dr. Coyne H. Campbell for a thorough examination as to his mental condition. The return of the sheriff to this order recites that defendant was taken to the sanitorium as directed in said order. There is nothing in the record to show the result of such examination. Dr. Campbell was not called as a witness.

On February 24th there was filed a communication addressed to the county attorney under date of February 22nd by the prosecuting witness, Shirley T. Moore, in which reference was made to the mental condition of defendant, and the county attorney was requested to dismiss the charge. The complaining witness stated that he was convinced the defendant was in need of medical treatment and should be placed in a veteran's hospital; that witness did not wish him prosecuted and if forced to testify in the case would state on the witness stand that he wished the case dismissed. On the same day there was filed on behalf of the defendant a written "plea" in which it was stated that defendant "pleads not guilty by reason of insanity and now insane." On the same day, there was filed an "answer" on behalf of the county attorney, denying the allegations of the above-mentioned "plea."

On said February 24th, there was entered on the clerk's minutes an entry showing the case "stricken 2-24-49, and reset for March jury docket. Def's motion to dismiss overruled; exc. allowed," the motion being ruled on by a judge other than the one ordering defendant's examination. On March 4th, another entry was made showing the case reset for March 16th.

On March 16th the case came on for trial before District Judge Glen O. Morris, a third judge in the case, at which time defendant appeared in person and by counsel, and a jury was selected and sworn to try the case.

Up to this point there is nothing in the record to show that the question of the mental capacity of the defendant had ever been called to the attention of Judge Morris. The order directing that defendant be taken to the sanitorium for examination had been made by a different judge. The minutes in connection with defendant's arraignment would not show any question of present sanity and the record does not indicate that the written "plea" signed by defense attorneys was called to the court's attention. The only thing indicating that the issue might have come to the attention of Judge Morris is found in the clerk's minutes of March 16th as disclosed by the record herein, where it is recited that:

"Def. waives hearing on application for sanity hearing, and elects to go to trial on issues presented in the information filed herein."

At the trial, Dr. B. H. Moore testified on behalf of the defendant that he regarded him insane and in need of treatment. It cannot be determined from the record whether it was the doctor's opinion that he was legally and not merely medically insane. Two doctors testified in rebuttal for the state and expressed the opinion that the defendant was sane; that is, could tell right from wrong. There was no demand, other than the demands recited, for trial as to his present mental condition after conviction and before sentence, though the petition for new trial did set out, among other things:

"That the court erred in denying a sanity hearing on January 24, 1949, at which time the defendant was prepared for said hearing and had all witnesses in said court."

Also, the instrument or "plea" filed by defendant at the time of the trial, above quoted, contained the words "and now insane." A number of defendant's witnesses recounted unusual and unorthodox acts of defendant covering a period of time since return from the military service. The county attorney in cross-examining the defendant's mother brought out from her: "I got a paper to have him taken to Dr. Coyne Campbell's Clinic." He then asked her, "Did Dr. Campbell tell you he was insane? A. He told me he wasn't right. I haven't had him examined by Dr. Parker, the psychiatrist for the Veterans' Hospital." This is all the evidence concerning the results of the examination ordered by the court. The state did not offer any different evidence. Of the physicians testifying it appears that the examinations made were more or less casual and made at the jail and that there was no period of hospitalization or extended and thorough tests. The extent of Dr. Campbell's examination is not shown.

The facts surrounding the robbery were indicative of either a low moronic mentality or irrational thinking, for after hiring the prosecuting witness, Shirley Thomas Moore, a taxi driver, to drive him to a cafe, he then directed him to drive him to his home at Southeast Forty-Fourth and Bryan streets, but in directing the driver he did not have him drive exactly to his home, but to a house in the general vicinity. When the driver turned on his light that he used when making change, the defendant drew a knife on him and had him hand over his change from his coat pocket and hand over his wallet that contained about $25, his personal property. The next morning the officers drove to Southeast Forty-Fourth and Bryan and arrested the defendant as he and his parents were preparing to enter a car parked in front of their home.

The court gave three instructions dealing with the issue of insanity, that informed the jury that the test was "the capacity to know right from wrong at the time the alleged act was committed."

There can be no doubt of defendant's guilt, and the evidence indicates that he was a kleptomaniac as claimed. The mother claimed that defendant had lived at her home except for occasional visits to two aunts in Oklahoma, and she disclaimed any knowledge of any forays elsewhere, but on cross-examination admitted knowledge of defendant showing up in a number of distant cities and becoming so seriously injured at one place that long hospitalization was required, and the value of her evidence was nullified by her obvious misstatements. Nevertheless, our task is to determine whether or not the court prior to trial should have impaneled a special jury and submitted the question of insanity to the jury, the defense claiming that the defendant was insane at the time the offense was committed, and also insane at the time of the trial.

The statutory provisions are as follows, Title 22 O. S. A.:

§ 1162. "When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the

sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact. (R.L.1910, par. 6050)"

§ 1163. "The trial of the cause or the pronouncing the judgment, as the case may be, must be suspended until the question of insanity is determined by the verdict of the jury. (R.L. 1910, par. 6051)"

The first inquiry is as to how the doubt mentioned in the statute may be raised. As pointed out by counsel for defendant on appeal, this and the other questions involved seem to be well treated in the case of Johnson v. State, 73 Okla. Cr. 370, 121 P.2d 625.

In connection with the Johnson case and the authorities therein cited, the later cases of Rice v. State, 80 Okla. Cr. 277, 158 P.2d 912, Bingham v. State, 82 Okla. Cr. 5, 165 P.2d 646, Id. 82 Okla. Cr. 305, 169 P. 2d 311, and Mitts v. State, 82 Okla. Cr. 367, 170 P. 2d 563, should be carefully studied.

In the Johnson case this court held (fourth paragraph of the syllabus):

"This doubt may arise in the mind of the court upon application for a continuance, motion for a new trial, motion in arrest of judgment, by ex parte affidavit or declaration of a bystander, or the court of its own motion; and while the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of the defendant. He may also consider the fact that the question of insanity was never raised."

To the inquiry, "what is a reputable source?" We consider the fifth and sixth paragraphs of the syllabus:

"If a claim coming from a reputable source is made, either at the beginning of the trial or at the time for judgment and sentence, that the defendant is insane at the time, with a reasonable showing or tender of proof in support thereof, it is the duty of the court to submit the question to a jury.

"Where counsel for accused files a written request for a sanity hearing, supported by affidavit of accused's wife and statement of counsel expressing his personal belief that accused was presently insane then a legal doubt of defendant's sanity arises, and it is an abuse of discretion for the trial court to refuse to submit the issue to a jury."

The Johnson case, supra, quotes from Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136, where in discussing "legal doubt" this court said:

"When the motion is made and supported by such a showing, then a legal doubt of defendant's sanity arises, and it is the duty of the trial court to impanel a jury and to try the issue. While a trial judge may personally have no doubt of defendant's sanity, yet if the motion and showing in support thereof is substantially as outlined, it is sufficient legally to raise a doubt. In such a case, a refusal to submit the issue to the jury is an abuse of discretion."

Also quoted with approval is Marshall v. Territory, 2 Okla. Cr. 136, 101 P. 139, wherein this court said:

"If there exists in the mind of the court a doubt as to the sanity of the defendant, as expressed in the statute, means if the court has been advised from a reputable source—that is, if a statement is made to the court by credible person, or persons, under oath that the defendant is insane—a doubt is raised. While there is a judicial discretion left to the court to determine whether there exists in the mind of the court a doubt, nevertheless such discretion should not be arbitrarily exercised, and its positive declaration and statement, as above indi-

cated, that the defendant is insane necessarily presents a condition calling for investigation. The court may look to the source of information, the motive, opportunity, etc., of the party making it, but if the court denies the inquiry by a jury, it must do so under circumstances excluding all doubt of the truthfulness of the declaration that the defendant is insane."

In the within case the affidavit filed prior to trial positively declares that the defendant is insane and sets out facts that require the interpretation of a physician skilled in mental disorders. If the affidavit and plea had merely been that defendant was not guilty by reason of insanity at the time of the commission of the act charged, the procedure followed by the court would have been correct. Weiland v. State, 58 Okla. Cr. 108, 50 P. 2d 741. But here it was alleged that not only was the defendant insane at the time of the alleged commission of the act charged, but was insane at the time of the trial.

Under such a state of the record, we must assume that the trial judge had knowledge of what had taken place in the case prior to assignment to him for trial. The inquiry necessary was "whether the defendant is mentally competent to make a defense", and the trial should not have been commenced until the question of the present sanity was determined by the verdict of the jury, and the question should have been submitted to a jury impaneled for that specific purpose. Tit. 22 O.S.A. § § 1162, 1163. See Weiland v. State, supra, and Johnson v. State, supra.

The record, as stated, does not show the court's action with respect to the plea of insanity that was filed immediately prior to trial, and defendant's attorney announced ready for trial without further objection, which raises the question of whether or not counsel for the defendant at this point, and with the record in the state heretofore recited, could waive the right of the defendant to an inquiry as to defendant's sanity.

Of course, if the accused was insane at the time of the commission of the crime he would not be treated as having the capacity to commit the crime, and if he was also insane at the time of the trial he would not be treated as having the ability to make a rational defense and his trial, as we have seen from the authorities heretofore mentioned, would of necessity be deferred until said person was again rational. The issue is a fundamental one, where if a doubt arises as to the present sanity of the defendant the court must order a jury impaneled to inquire into the fact. Counsel for defendant could not waive this question. This court has so held in Signs v. State, 35 Okla. Cr. 340, 250 P. 938, which holding has been approved in Johnson v. State, supra.

In the Signs case, counsel for defendant had prior to trial filed an affidavit setting out that he believed defendant insane and not in a mental condition to make a defense. The court, thereupon, called a jury for a trial on the sanity of the defendant. This jury was unable to reach a verdict and was discharged and the case was continued by agreement, and counsel for defendant failed to suggest insanity when the case next came on for trial. The question was not raised in motion for new trial, after defendant was convicted. On appeal, on the point of the question of the insanity of the defendant, the gist of the holding of the court was that doubt having once arisen in the mind of the court, it was necessary that the question of sanity be determined prior to trial for the crime charged, and that it was reversible error not so to do, and that counsel for defendant could not waive this question.

While in the within case it is reasonable and conceivable that the affidavit of the mother alone might not have raised a doubt in the mind of the court as to the sanity of the defendant, because the first of the three judges having to do with the case did order the defendant to be taken for examination to a physician

who specialized in mental disorders, the findings, as stated, are not disclosed by the record, except that the mother at trial testified that the physician told her that her son "was not right". Thereafter, the prosecuting witness filed an affidavit expressing his desire not to prosecute and which cast doubt on the sanity of the accused. Also, counsel for defendant immediately prior to trial filed an instrument alleging the present insanity of the defendant.

The within case is readily distinguishable from the case of Bingham v. State, supra, for in that case the plea was not guilty by reason of insanity at time of the commission of the crime, and present insanity was not suggested. The defendant was convicted, and the evidence at trial of defendant's mental condition was not held to be such as to have made it an abuse of discretion for the court on his own initiative to have stopped the trial and submitted the question of the present sanity of the accused, for thereafter the accused under such circumstances could plead former jeopardy, and the statute makes no provision for such, but does provide, as we have seen, that the question could have been raised on motion for new trial and at time of pronouncement of judgment. It was never at any time raised. And the evidence was not such as to have made it an abuse of discretion for the court after verdict to have submitted the issue to a jury.

In that case it was pointed out that the issue must be settled prior to the trial if properly raised, or if not raised, and a doubt enters the mind of the court of the present sanity, then the matter could be determined by a special jury at the time the defendant was brought before the court for the pronouncement of judgment. The jury in that case, as here, held the defendant sane at the time of the commission of the crime. But, as stated, the present sanity of the accused in that case, was not raised at any stage of the proceedings. Not so here.

Under such circumstances, and in view of the state of the record (which record the third judge involved, and who tried the case and must be held to have had full knowledge of), we are compelled to hold that it was an abuse of discretion not to have determined the present sanity of the defendant by a separate jury impaneled for that purpose prior to trial.

The case is reversed and defendant is granted a new trial, the court to first impanel a jury to determine the question of the present sanity of the defendant, prior to the trial of defendant for the crime for which charged. The question, then, of defendant's sanity at the time of the commission of the crime charged may be determined in the trial to be had as before, if the first jury make a finding that defendant is presently sane.

JONES, J., concurs. BRETT, P. J., not participating.