Kenneth Wayne BROWN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12276.

Criminal Court of Appeals of Oklahoma.

Nov. 28, 1956.

Hughes & Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam. H. Lattimore, Asst. Atty. Gen., Ross Ruther-ford, County Atty., Jackson County, Altus, for defendant in error.

BRETT, Judge.

Plaintiff in error, Kenneth Wayne Brown, defendant below, was charged by information in the District Court of Jackson County, Oklahoma, with the crime of first degree rape in that he did on or about the 14th day of March, 1955, willfully, unlawfully, wrongfully, forcibly and feloniously assault and ravish one Thelma Little in said county and state. He was tried by a jury, convicted, and sentenced to serve a term of 35 years in the state penitentiary. Judgment and sentence were entered accordingly from which this appeal has been perfected.

The defendant's first proposition is that the trial court erred in overruling the defendant's original motion for change of venue. In support of the motion, the defendant submitted 32 affidavits of what appears to be substantial citizens from a considerable number of the communities in Jackson County. In these affidavits, the affiants in substance stated that they had been residents of Jackson County for periods ranging from 9 to 75 years, they believed that the inhabitants of the county were so biased and prejudiced against the defendant that neither a fair and impartial jury nor fair and impartial trial could be had in Jackson County. The affiants said that their opinion was predicated upon general discussions heard by the residents of the county among potential jurors. At a later time in a supplemental proceeding for change of venue, the defendant filed 5 additional supporting affidavits to the motion for change of venue.

To the allegations in the motion for change of venue, the state filed 6 counteraffidavits, wherein in substance it was stated that the affiants were familiar with public opinion in the city and county based upon their familiarity with public sentiment in the city and county, and it was their opinion that the defendant would have a fair trial and no person was heard to indicate that he would not have a fair trial.

Thereafter, the state, on the question of the change of venue, offered 8 supporting witnesses including a county commissioner, a Justice of the Peace of Jackson County, a member of the legislature from Jackson County, a farmer, an ex-Justice of the Peace for 30 years, a service station operator, the manager of a gin in the Friendship community, and an abstracter in Jackson County. The testimony of these witnesses, in substance, was that they had heard the question discussed in numerous places in and about the county and it was their opinion that the defendant would get a fair trial in Jackson County, that at no time had they heard anyone express anything to the contrary. One of the witnesses testified that because the defendant was a resident of Jackson County, everyone knew his grandfather, and his family had a fine reputation in the community that the people were of the opinion that he would be better off in Jackson County than in some county where he was not known. Another witness testified that the boy was of fine reputation, had many friends around Blair, that the people were very much surprised when the defendant was charged with this crime, and because of the reputation of his family, that seemed to be the general attitude of the people in the communities of Blair and Warren, especially. The general consensus of opinion among the witnesses who testified on this point was that the people of Jackson County were such class of citizens that they would give this defendant a fair trial.

■ The affidavits offered by the defendant, the counter-affidavits and the witnesses offered by the state presented a judicial question for the determination of the trial court. In Wininegar v. State, 97 Okl.Cr. 64, 257 P.2d 526, 529, it was held:

"On motion for change of venue, trial court sits in judgment on the question just as on any other question of fact that might be submitted to him, and unless it is clear that he has abused his discretion, or has committed error

in his judgment, his finding will not be disturbed."

"'An "abuse of discretion" by the court in passing on a motion for change of venue means a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application.'"

Rucker v. State, 88 Okl.Cr. 15, 195 P.2d 299, 313, 199 P.2d 221.

■ The affidavits offered in support of the motion for change of venue are general in nature and consist of mere allegations of conclusions of prejudice, unsupported by allegations of specific facts in support of the prejudice alleged. We are of the opinion the defendant's affidavits, in light of the counter-affidavits and sworn evidence offered by the state, are entirely insufficient to show a general prejudice throughout the county, and the trial court's conclusions are supported by the record. In Peters v. U. S., 2 Okl. 116, 33 P. 1031, it was stated:

"It is not error for a trial court to overrule an application for a change of venue from the county where the affidavits presented in support of such motion do not set forth the facts which in the opinion of the witness would operate to prevent a fair trial in the county in which the indictment is found."

In Etter v. State, 11 Okl.Cr. 208, 144 P. 560, it was said:

"The application for change of venue should contain a statement of material facts."

In Mooney v. State, Okl.Cr., 273 P.2d 768, 771, we quoted from Rawls v. State and other cases as follows:

"The affidavits in support of the change of venue do not meet these requirements. Moreover: 'On application for change of venue, affidavit of defendant in support thereof must not only aver that minds of inhabitants of

county in which cause is pending are so prejudiced against defendant that fair and impartial trial cannot be had therein, but must also set forth facts rendering fair and impartial trial there improbable.' Wininegar v. State, supra.

\* \* \* \* \* \*

"It does not appear that the trial court herein abused its discretion in denying the change of venue. We are of the opinion the defendant has failed to meet the burden on him of overcoming the presumption that he could get a fair and impartial trial in Okmulgee county. Rawls v. State, 86 Okl.Cr. 119, 190 P.2d 159."

See also Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643; Rucker v. State, 88 Okl.Cr. 15, 195 P.2d 299, 199 P.2d 221. Such is the situation in the case at bar, on this point, with reference to the affidavits and the sworn testimony.

In addition to the foregoing affidavits, the defendant offered certain newspaper articles which he claimed inflamed the minds of the people against him. On this prejudicial effect complained of, we have examined the newspaper articles and we find that they discussed the details of the crime in a most general way and they were not such articles as were designed to arouse the prejudice of the people against the defendant. Crimes of this nature naturally shock the sense of justice and decency of good people, but it does not necessarily follow that they would prejudge the defendant or deny him a fair trial. In this connection, see Huffman v. State, 28 Okl. Cr. 296, 230 P. 272. In Wininegar v. State, supra [97 Okl.Cr. 64, 257 P.2d 529], it was said:

"The fact that inhabitants of a county have read and heard of the commission of a crime does not disqualify them, and to warrant a change of venue, it must be made to appear that the inhabitants have a fixed opinion as to the guilt of the accused to the extent that the accused cannot have a fair trial by an impartial jury. Tit. 22 O.S.1951 § 561."

For the above and foregoing reasons, we are of the opinion that the trial court did not abuse its discretion in denying the motion for change of venue. Moreover, we are of the opinion that the verdict rendered bespeaks a lack of prejudice to a fair trial. The facts herein would have supported imposition of the supreme penalty.

The defendant's second contention is that the court erred in not impaneling a jury to determine the defendant's present sanity, prior to the time of trial on the crime herein alleged. On this point, the matter of the defendant's sanity was called to the attention of the court by the defendant on April 29, 1955. Attached to the defendant's motion were reports of the doctors who had examined the defendant in support thereof to have the defendant committed to a hospital for an examination. The motion was first overruled but thereafter, on May 6, 1955, the trial court made and entered its order committing the defendant to the Central State Griffin Memorial Hospital, Norman, Oklahoma, for such observation. After observation at the hospital, the defendant was found sane. On July 18, 1955, the record discloses the following proceedings:

"The Court: I think counsel has told me heretofore that you don't want a separate trial on insanity.

"Mr. Hughes: No, we are not asking for it.

"The Court: Counsel raising no question on the defendant's present sanity, and upon the basis of the doctor's report of the Oklahoma State Hospital the Court finds that the defendant is mentally competent at this time to go to trial and properly defend the case."

The identical question herein raised was raised in Miller v. State, Okl.Cr., 281 P.2d 441, 446. Therein, this court said:

"No question as to the sanity of the accused was ever presented in the instant case other than the motion which was filed asking that he be committed to the mental hospital for observation."

Such is the situation in the case at bar. The only time the question of present sanity was raised was in the motion to have the accused committed to a mental institution for observation and examination. To have preserved that question, such a motion would have had to have been renewed at the time of trial. This record clearly shows there was no intention to renew the question at that time, and herein lies the distinction between Berwick v. State, 94 Okl.Cr. 5, 229 P.2d 604, relied on by the defendant, and the case at bar. In the Berwick case, the question was raised at the time of trial. Moreover, nothing occurred at the trial to create a doubt in the trial court's mind relative to the defendant's ability to make a rational defense. He testified at great length in his own behalf to the effect that he could not have been the person that committed the crime because he was at other places and he positively denied his guilt. Under this state of the record, this point is wholly without merit.

■ The defendant's third contention is that the trial court erred in permitting Dr. Kleinschmidt, Superintendent of the Central State Griffin Memorial Hospital of the Department of Public Health, to testify in rebuttal as a witness for the state, for the reason the evidence was procured in an illegal and unconstitutional manner. The record in this connection discloses that on the 5th day of April, 1955, the defendant filed a motion for order directing his admission to a State Hospital for the reason that a question of the defendant's sanity or state of mental health had arisen and that the defendant should be committed to a State Hospital within the Department of Public Health for observation for a period not to exceed 90 days as provided by 43A O.S.1953 Supp. § 60. Thereafter, on April 29, 1955, said motion came on for hearing. The affidavits and written statements of five doctors, pro and con, were heard on the matter. The motion was, at that time, overruled. Thereafter, on May 6, 1955, Mr. Harold Witcher, an attorney of Washita County, Oklahoma, and a member of the Oklahoma State Legislature, was employed in the case and a motion for continuance was filed under the provisions of 12 O.S. 1955 Supp. § 667, as enacted on May 5, 1955, granting continuances as provided in said act to attorneys in the Legislature employed as trial counsel. A continuance was granted and thereafter, on the 6th of May, 1955, the court entered an order committing the defendant to the Central State Griffin Memorial Hospital for a period of 30 days for observation in conformity with the defendant's motion and under the provisions of the aforesaid statute. Under the conditions herewith presented, it was within the trial court's powers so to do. The defendant was committed and after observation, Dr. Kleinschmidt, who not only had the defendant under his personal observation and examination, but after collaboration with members of his staff at the hospital found and reported to the trial court in part as follows: "It was definitely felt that he had no periods of amnesia during the time of the alleged offenses and, in fact, his memory is quite good. He is entirely sane and legally responsible for his actions; knows the difference between right and wrong and is able to adhere to the right and refrain from the wrong, and is able to appear as a witness in his own behalf. The electro-encephalogram had a borderline abnormality which is not of clinical significance."

■ When Dr. Kleinschmidt's testimony was offered at the time of trial, the defendant sought to have the testimony excluded for the reason that the commitment of the defendant was without notice to the de-

fendant. The defendant did not know he was going to be sent to this institution until after he was well on the road to the institution in custody of the officers and he was already in the hospital before his attorneys learned he was going to be sent there for an examination. It appears that counsel had knowledge of the examination before it was finished and the report made thereon. Notwithstanding knowledge of the defendant and his attorneys that he was in the hospital for examination and observation, neither, in any way, sought to prevent the same from being conducted and the results thereof being made to the trial court. They made no assertions whatsoever that the defendant was being deprived of his constitutional rights or made no effort to obtain his release from the said hospital by habeas corpus. In re Lutker, Okl.Cr., 274 P.2d 786. In fact no objection was raised anytime, by motion to suppress or otherwise, until the objection when the state offered Dr. Kleinschmidt as a witness in rebuttal. The contention thus advanced in our opinion is wholly without merit for the court conducted a hearing on the defendant's motion on the question of the defendant's sanity, heard evidence both for and against, all upon the request of the defendant, himself. When the order was made, it clearly appeared that the observation and examination was entirely satisfactory with the defendant and his counsel.

The defendant further complains of the use of certain techniques employed in the examinations, such as the use of sodium pentothol. But, the record clearly indicates that the defendant's mental condition was not determined by this alone. It constituted only a part, in fact a small portion, of the examination. By no means can it be said that it was to be a controlling factor in the results. Therein lies the distinction between its use in the case at bar and in Henderson v. State, Okl.Cr.App., 230 P.2d 495, 23 A.L.R.2d 1292, the truth serum case, cited and relied on by the defendant. We are further of the opinion that Dr. Kleinschmidt's personal observations and examinations of the defendant as well as his collaboration with his associates, such as X-ray reports, encephalogram charts, etc., forms a sound basis for his conclusions as to the defendant's sanity. As an expert witness, his conclusions were competent evidence.

Moreover, it is worth noting that at the time the motion was presented and overruled in the first instance, the examination was urged by the defendant on the proposition that in the State Hospital, laboratory tests could be made and instruments used that are recommended by psychiatrists. It appears the object of the defendant's motion had been accomplished and its unfavorable results made available to the trial court. From the record it is clear the defendant was perfectly willing to gamble on the outcome of the proceedings until its unfavorable consequences were offered in evidence. If the results had been favorable, the defendant would have accepted them. He cannot play fast and loose with the courts. We are of the opinion that the objection to the evidence of Dr. Kleinschmidt as rebuttal on the defendant's sanity was properly overruled.

Other objections are made in the defendant's third proposition to certain evidence offered in connection therewith, to which no objection was interposed and the same is not now available to the defendant.

The defendant's fourth proposition is to the effect that the trial court committed reversible error in its failure to instruct the jury as to what consideration should be given the evidence of twenty witnesses to the effect that the defendant was of prior good reputation. The record discloses in this connection that no request was made for an instruction relative to reputation and good citizenship at the trial, but, that six days subsequent to the trial, defendant filed his motion for new trial at which time he presented a requested instruction on prior reputation. The request came altogether too late to be available to the defendant on appeal. In Vester v.

State, 76 Okl.Cr. 235, 136 P.2d 205, 209, it was said:

"Defendant complains that the court did not instruct the jury upon the question of good character. A number of witnesses testified as to the good character of the defendant. If defendant had requested the giving or had presented a written instruction to this effect, it would have been proper to give the same. It is not revealed that any such written request was made. Defendant cites only the case of Morris v. Territory, 1 Okl.Cr. 617, 99 P. 760, 774, [Id., 1 Okl.Cr. 617], 101 P. 111. In that case a written requested instruction was presented. The same was denied and the case was affirmed. In the opinion, by Presiding Judge Furman, the court said: 'The evidence of the character of the defendant, both for and against him, was before the jury. They were correctly instructed that the presumption of innocence and the doctrine of reasonable doubt were applicable to all of the evidence in the case. It would have been better for the court to have given an instruction upon character, embodying the views expressed by the Supreme Court of the United States in White's case (White v. United States, 164 U.S. 100, 17 S. Ct. 38, 41 L.Ed. 365), hereinbefore quoted and approved. In some cases, it might be reversible error to fail to give such an instruction; but our statute requires us to construe laws liberally and in the furtherance of justice, and forbids us from reversing a conviction upon a technical error or an exception that does not affect the substantial rights of the defendant. In this case we do not believe that an intelligent and honest jury could be found, who, with a due regard for their oaths, and the testimony and the law, could ever come to any other conclusion than that the defendant was guilty of murder. Under the statute, above quoted, and after a consideration of the entire record, we are constrained to hold that in this case reversible error was not committed by failure of the court to instruct the jury upon the question of character.'

"In the annotation in Oklahoma Statutes Annotated, 1941, Title 22, Section 831, note 309, in quoting the case of Lumplin v. State, 5 Okl.Cr. 488, 115 P. 478, it is said: 'Under subdivision 5 of this section, and section 856 of this title, the judge is required only to give in charge such matters of law as he thinks necessary for information of the jury in rendering their verdict, which instructions must be settled after the introduction of evidence is concluded, and if counsel for accused desire additional instruction, they must reduce such instructions to writing and request that they be given, and a conviction will not be reversed where there is a failure to make such request, unless the Criminal Court of Appeals is of the opinion in the light of the entire record and instructions that, because of failure to instruct upon some material question of law, accused has been deprived of a substantial right.' Lee v. State, 67 Okl. Cr. 283, 94 P.2d 5; Green v. State, 70 Okl.Cr. 228, 105 P.2d 795; Pulliam v. State, 61 Okl.Cr. 18, 65 P.2d 426; Short v. State, 74 Okl.Cr. 272, 125 P. 2d 227; Adams v. State, 62 Okl.Cr. 167, 70 P.2d 821.

"In the instant case, the court instructed the jury upon the question of reasonable doubt, and upon the presumption of innocence, and under the facts, as above stated, we are of the opinion that it was not error for the court to fail to give an instruction as to the good character of the defendant, when the same was not requested by counsel for defendant."

See also Holcomb v. State, 95 Okl.Cr. 55, 239 P.2d 806. The jury herein was so instructed. It is apparent from the record

as a whole that the jury was not prejudiced by the failure of the court to instruct it upon the question of prior reputation and that they did take into consideration the defendant's evidence offered in support of the same. If such were not the case, we are of the opinion that a much more severe penalty might have been imposed.

The defendant's next proposition goes to the merits of the case. Briefly, the evidence herein disclosed that armed with a .45 Colt's automatic pistol the defendant invaded the home of Thelma Little, 49 years of age, about 8:00 P.M. where together with her husband she was viewing television. Ostensibly, he came to rob them of valuables on their persons and in a non-existent wall safe which he seemed to believe they might have on their premises. Being unable to discover a wall safe, he then proceeded to take Mr. Little into the southeast bedroom where he tied his hands behind him and his feet to the dresser, face down on the floor. The defendant took Mrs. Little into the northeast bedroom where the grandson was asleep on the bed. He tied Mrs. Little's hands to the legs of the foot of the bed, proceeded to completely disrobe her, and under caution not to scream and threat to her life and injury to the grandchild if she did, he had intercourse with her on the floor. He then untied her hands and had intercourse with her three additional times, under threats. Mrs. Little testified she was overcome with fear for herself and her family. She was then permitted to dress.

Thereafter, five additional persons came to the premises and the defendant jerked the telephone from the wall, severing the wires, and then herded all of the said persons into an upstairs garage apartment where he took the keys to an automobile belonging to the family and made his escape, after he had robbed most of said persons of their valuables. Five of the persons in the Little home the night of the crime positively identified the defendant, including Mrs. Little.

The defendant's defense was in the nature of an alibi which he himself did not corroborate. In support of the alibi, five witnesses testified that he had been in a picture show and emerged therefrom about 10:30 P.M. The defendant refused to fix the night he was seen at the picture show as being the night of the alleged offense. The five persons who positively identified him put him on the Little premises from 8:00 P.M. until about 11:00 or 11:30 P.M. It was established that about 11:30 P.M. the defendant went to the home of a friend whom he aroused from his bed and prevailed upon him to drive him to his home near Blair, Oklahoma. This witness further admitted that several days prior to the incident he and the defendant had gone hunting with .45 caliber automatics belonging to the defendant.

The only time that the defendant shielded himself from identification was when Mrs. Little's son-in-law, the defendant's former instructor in the National Guard, made his appearance on the premises, it being disclosed that this son-in-law would make his appearance shortly and he being the only person who knew the accused, the accused required a tea towel be tied around his face, masking his features below the eyes.

The evidence of defendant's guilt is clear and conclusive. In any event, its conflicting character presented a question of fact for the jury. Stuart v. State, Okl.Cr., 280 P.2d 755; Dodson v. State, Okl.Cr., 284 P.2d 437. We are further of the opinion that the record as a whole does not support the defendant's contention that he was not afforded a fair and impartial trial as by law provided.

Other contentions are raised which we do not deem sufficiently meritorious to warrant discussion. For all of the foregoing reasons, the judgment and sentence is affirmed.

JONES, P. J., and POWELL, J., concur.