James D. **FRENCH**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–13421.

Court of Criminal Appeals of Oklahoma.

Dec. 30, 1964.

See also Okl.Cr., 377 P.2d 501.

Clyde Stipe, McAlester, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

JOHNSON, Presiding Judge.

Counsel for the plaintiff in error, hereinafter referred to as the defendant, sets forth fourteen separate assignments of error in his petition in error. However, he states in his brief that he will only urge two of these assignments:

"(1) The trial court erred in overruling the motion of the defendant for a trial on the issue of insanity before the issue of the crime was tried.

"(2) Error of the court in giving oral instructions to the jury after the case had been submitted."

The Court would first like to commend both counsel for the very excellent briefs in this case. Rarely does the Court have the propositions set forth in briefs of counsel so thoroughly covered.

Regarding the first assignment of error, both counsel rely on the same statutory and case law, and only disagree as to the application of the same in the present case.

The controlling statute, 22 O.S.A.1961 § 1162, states:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

██ Had the trial court only the statement of counsel, under oath, of his opinion of the defendant's sanity, after several conferences with him and nothing else, that is no further proof of sanity or insanity, this Court would agree that the trial court would have been remiss in not granting the defendant a trial to determine present sanity. However, in the instant case the trial court had many other sources of information available to him. He certainly acted properly in considering these sources, and as the Court said in Johnson v. State, 73 Okl.Cr. 370, 121 P.2d 625:

"While the court cannot act arbitrarily in the matter, it has the right to look to the source of the information, and come to a proper conclusion, from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of the defendant."

██ This defendant had twice been sent to the state hospitals for observation and had twice been found competent to assist in his defense. He had also corresponded with the trial court and the trial court had further had many opportunities to observe this defendant personally. Therefore, we feel the trial court did not act arbitrarily when it denied the defendant's request for a jury trial on the matter of sanity prior to trying him on the charge of murder.

Here the question posed, was the defendant mentally competent to make a rational defense, or to assist his counsel in his defense, with the facts before this Court, we feel that he was.

The fact situations in the present case and the other cases relied on by counsel for defendant are vitally different.

In the case of Johnson v. State, supra, the defendant's request to be sent to the state hospital for observation was denied, and the trial court made this denial based solely on its own observation of the defendant.

In Denton v. State, 58 Okl.Cr. 275, 53 P. 2d 1136, the question of present sanity was raised by way of a motion in arrest of judgment after defendant had been found guilty of murder and given the death sentence. There the motion was supported by eight other exhibits, consisting of letters and affidavits, and the court held these to be sufficient to compel a trial on this issue before imposing judgment and sentence.

And finally, in the case of Berwick v. State, 94 Okl.Cr. 5, 229 P.2d 604, the court was furnished with a verified statement from the defendant's mother concerning injury to her son during his military service, and a request from the complaining witness that the defendant be offered medical treatment for his mental condition.

The defendant's second assignment of error presents a problem that is of great concern to this Court. We realize the trial courts of this State are continually called upon by juries, and make certain oral explanations of their instructions and the law. To refuse to make comment, other than to inform the jury that their instructions should be self-explanatory, does not

help the jury in their deliberations. To expand upon the written instructions places the trial court in danger of committing reversible error. What should the trial court do?

■ This Court is of the opinion that the giving of oral explanations of written instructions is a dangerous practice, and one that should be avoided if at all possible by all trial courts. This, we feel, is borne out by the proceedings in the instant case, when the following conversation took place between the trial judge and the foreman of the jury:

"Court: Do you have a question, Mr. Foreman? A. Yes, sir. We are in doubt of what life imprisonment is. Some say it means ten, fifteen or twenty years. That is what the hold-up is. We want to know.

"Court: Gentlemen, life imprisonment means life imprisonment unless in the discretion of the Parole Board approved by the Governor of the State it is reduced by parole. A person is eligible for parole provided he meets all of the requirements and it is recommended by the Parole Board and approved by the Governor, at the end of fifteen years.

"Mr. Stipe [Attorney for defendant]: I object. When you gave the instructions—I will make my record later.

"The Court: Gentlemen, that is all I can say.

"Foreman: Now, can one be given life imprisonment without Pardon and Parole?

"Court: My answer is NO."

■ Did this constitute reversible error? Was it harmful and prejudicial to the defendant? We cannot help but feel that the statement was harmful to the defendant. It is evident that this jury was considering the sentence of life imprisonment when the trial judge made his statement: "Gentlemen, life imprisonment means life imprisonment unless in the discretion of the Parole Board approved by the Governor of the State, it is reduced by parole. A person is eligible for parole provided he meets all of the requirements and it is recommended by the Parole Board and approved by the Governor, at the end of fifteen years." This changed their minds.

The first sentence in this statement that is, "Gentlemen, life imprisonment means life imprisonment unless in the discretion of the Parole Board, approved by the Governor of the State, it is reduced by parole" fairly states the law, as set forth in the statute (57 O.S.A. §§ 332 and 332.7). However, we cannot agree that the court has the right to cite Pardon and Parole Board policies, no matter how well established and generally recognized they are, which they did in the last sentence of the judge's statement, when the court said: "A person is eligible for parole provided he meets all of the requirements and it is recommended by the Parole Board and approved by the Governor, at the end of fifteen (15) years."

■ Instructions must not invade the province of the jury, and *should not extend beyond a clear statement of law applicable to the case.* Shaffer v. State, Okl.Cr., 283 P.2d 578; Brookshire v. State, Okl.Cr., 284 P.2d 752.

■ This would also apply to an explanation of a written instruction, and to incorporate the policy of an administrative agency of the State into the oral explanation of a written instruction would certainly extend beyond a clear statement of the law, and would constitute error.

The State has cited much authority sustaining their position, and we agree that a judge cannot allow a jury to flounder in a state of confusion when they propound a question to the court concerning one of the instructions. But in the instant case the explanation was the determining factor in the jury's decision to give this defendant

the death sentence. Had the trial court not given this explanation, we feel certain the defendant would have been given a life sentence.

■ The Court would again remind all trial judges to project themselves into the trial of a criminal case as little as possible. They should remember that any action they take or remark they may make as judge, will carry greater weight with the jury than anything that is said or done by anyone else in the court room.

For the reason stated, the judgment of the district court of Pittsburg County is reversed, and the case remanded for a new trial.

NIX, J., concurs.

BUSSEY, Justice (concurring).

I am in accord with the conclusion reached by my learned colleague, Judge Johnson, and, while it might be argued that the bizarre facts and circumstances surrounding the homicide in the instant case would justify this Court in affirming the judgment and sentence, and making an exception to the well established rule that the trial court should not invade the province of the jury, such a conclusion would be another step leading to the destruction of the jury system.

In reversing and remanding this cause for a new trial we accord to this defendant only the right which the legislature, in its wisdom, grants to every person convicted of murder, to-wit: the right to have the jury determine whether the punishment shall be death, or imprisonment at hard labor in the State Penitentiary for life. See Tit. 21 O.S.A. § 707. The colloquy between the trial court and the foreman of the jury placed before them matters not germane to the issue of punishment, and undoubtedly influenced the verdict.