court, attorney and amount paid to attorney for services _____
_____.

H. If you have posted bond, who provided the funds for the bond?

I. Do you have any friends or relatives who are able and willing to assist you in hiring counsel and paying for transcripts? Yes ( ) No ( ) If so, have those persons been asked to help? Yes ( ) No ( )

J. If a friend or relative has given previous financial assistance in this case, but is no longer able or willing to do so, an affidavit to that effect from that person should be attached.

I further swear and affirm that I am without funds or other sources of income to pay an attorney or to pay for transcripts and costs associated with this case.

Subscribed and sworn to before me this _____ of _____, 19___.

COURT CLERK

By:_____

Deputy

Adolphus Lee WEST, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–721.

Court of Criminal Appeals of Oklahoma.

July 25, 1978.

John T. Elliott, Public Defender, Bert A. Richard, Jr., Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Julia T. Brown, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Adolphus Lee West, hereinafter referred to as defendant, was tried and convicted by a jury in the Oklahoma County District Court, Case No. CRF-76–2530, of the offense of Murder in the Second Degree and was sentenced to an indeterminate term of ten (10) years to life imprisonment. From said judgment and sentence an appeal has been perfected to this Court.

The State's first witness was Officer Roger Whiteman of the Oklahoma City Police Department. Officer Whiteman testified that on July 3, 1976, he was dispatched to defendant's residence to investigate a shooting. Upon arriving at the scene, the officer observed a black male sitting in a slouched position in a chair in the living room. The officer entered the residence and observed the defendant, who told the officer he had shot the victim. Thereafter, the officer determined that the black man was dead. The witness then identified State's Exhibit No. 1 as the gun which he retrieved from the defendant.

The State's next witness was Don Cravens of the Oklahoma City Police Department Technical Investigative Services Division. Officer Cravens testified that he made a technical examination of the defendant's residence, which consisted of photographing the entire scene and taking certain items of evidence into custody, including a .22 caliber pistol and a brown handled pocket knife.

Testimony was then given by Robert Boeckel, a tenant of the defendant. Mr. Boeckel testified that on the date in question he had observed the deceased sitting in the living room in a chair, engaged in a conversation with the defendant.

At this time the State and the defendant, by and through his attorney, then entered into a stipulation that State's Exhibit No. 9, a leaden pellet was a projectile removed from the body of the deceased and that it had been fired from State's Exhibit No. 1, a pistol.

The State's next witness was Leslie McCaleb of the Oklahoma City Police Department. He testified that after reading the defendant his *Miranda* rights he took an oral and a written statement. The witness related that the substance of the oral statement was that the defendant and the deceased were talking in defendant's living room after having mowed the defendant's lawn, that they got into an argument and the deceased pulled out a pocket knife and, because the deceased had a menacing look on his face, the defendant felt threatened and shot him. The witness further testified that defendant stated he was not verbally threatened, nor did the deceased rise or attempt to arise from the chair. The witness then identified State's Exhibit No. 10 as the original copy of the written statement taken from the defendant after he was again advised of his *Miranda* rights. The witness then read the questions and answers contained in the written statement,

and they were substantially the same as defendant's oral statement.

The next witness for the State was Officer George Doughty of the Oklahoma City Police Department, who corroborated Officer McCaleb insofar as the defendant was given his *Miranda* warnings prior to making the oral and written statements.

The State then called Dr. A. J. Chapman, Chief Medical Examiner for the State of Oklahoma. Dr. Chapman testified that he performed an autopsy on the deceased and that in his opinion the cause of death was the gunshot wound to the chest.

The next witness was Officer Nathan Pyle of the Oklahoma City Police Department who testified that he was dispatched to the defendant's residence on the date in question. Officer Pyle further testified that upon arriving at the residence Officer Whiteman advised him that the defendant was under arrest and had been given his *Miranda* rights. The witness further testified that he took the defendant to the patrol car, again advising him of his *Miranda* rights. The witness than related that the defendant made a statement that he shot the deceased through the heart. Officer Pyle stated the defendant seemed very happy about what he had done, bragging about the shooting all the way to the police station.

Officer McCaleb was then recalled to the witness stand and testified that he checked the victim for powder burns and was unable to find any.

The next witness for the State was Richard Reed, an investigator for the Office of the Chief Medical Examiner. The witness, being a qualified expert in the field of powder burns from gunshot wounds, testified that a gun such as State's Exhibit No. 1, would not leave powder burns if fired at a distance of more than two feet from the victim.

The defendant then took the witness stand on his own behalf. He testified that the deceased had been mowing his lawn.

The deceased left for approximately an hour and upon his return he forced open a storm door to the defendant's residence, entered and began to go through defendant's wallet. The defendant then took the wallet from the deceased and the deceased "kneed" the defendant in the groin. The defendant testified he was able to momentarily subdue the deceased by pushing him into a chair. A this point the deceased, still seated in the chair, pulled out a pocket knife. The defendant then picked up the pistol and pointed it at the deceased. The pocket knife was dropped to the floor and the defendant picked it up, closed it and placed it on the coffee table in front of where he was seated on the couch. He again pointed the pistol at the deceased. The defendant then testified that as the deceased started to get up from the chair the pistol accidentally fired. Shortly thereafter the defendant called the police and reported the shooting. Finally, the defendant denied making the incriminating statements testified to by Officers Whiteman and Pyle, and furthermore that although he had read the written statement, he signed it out of fear and without being allowed to consult with an attorney, which he had allegedly requested.

On rebuttal, the State called Mary Scott, sister of the defendant, who testified that the storm door handle had been broken for over ten years.

The State next called Pamela Liverman, a clerk with the Oklahoma City Police Department. This witness testified that she typed the voluntary statement given by the defendant and furthermore that the defendant read over the statement after it was typed, not objecting to any of its content.

The State's last rebuttal witness was Thomas Jordan, a firearms examiner with the Oklahoma State Bureau of Investigation. He stated that in his opinion it would be very unlikely for the weapon involved in this case to have discharged without the trigger being pulled.

■ The defendant's first assignment of error is that the trial court erroneously admitted oral and written statements made by the defendant. First, the defendant alleges that it was error to admit his oral statement to Officer Whiteman because the statement was made before he had been advised of his *Miranda* rights. We are of the opinion that the statement made to Officer Whiteman was properly admitted. This statement was not the product of a custodial interrogation, but rather was a voluntary statement spontaneously made to the officer who arrived first on the scene. As stated in *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966):

"... There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (footnote omitted)

See also, *Grist v. State*, Okl.Cr., 510 P.2d 964 (1973), and *Drake v. State*, Okl.Cr., 437 P.2d 461 (1968).

■ Next, the defendant contends that his statements introduced at trial were not given voluntarily and that he did not make a knowing and intelligent waiver of his right to remain silent and to confer with an attorney prior to questioning. In support of this contention, the defendant relies solely upon his own testimony given in open court after the judge ruled on the admissibility of the statements in an in camera hearing. The only testimony presented at the in camera hearing was that of the interrogating officers, who stated that the defendant had been given his *Miranda* warnings and that after the substance of his statements were reduced to writing the defendant read and signed the written statements. Since the defendant failed to offer any evidence at the in camera hearing in support of his contention, we are of the opinion that the trial judge was correct in admitting the statements, and once properly admitted the question of voluntariness became one of fact to be determined by the jury. See, *Altman v. State*, Okl.Cr., 568 P.2d 311 (1977).

■ Defendant's second assignment of error is that the trial court abused its discretion by not declaring a mistrial based on an alleged evidentiary harpoon.

An examination of the record reveals that defense counsel made no objection to the alleged improper testimony. As stated in *Davis v. State*, Okl.Cr., 488 P.2d 932, 935 (1971), "It is the general rule of law that objections must be made in a timely manner, and failure to so object constitutes waiver, ..."

■ The defendant's third assignment of error is that the trial court abused its discretion by admitting into evidence State's Exhibit No. 1, the alleged murder weapon. The defendant alleges that the chain of custody of the pistol had not been properly established. An examination of the record reveals that this contention is totally without merit because there was testimony showing chain of custody. See, *White v. State*, Okl.Cr., 568 P.2d 329 (1977).

■ The defendant's fourth assignment of error is that the trial court abused its discretion by failing to instruct the jury regarding intoxication and its affect on the ability to form intent. As stated in *Gibson v. State*, Okl.Cr., 501 P.2d 891 (1972), if there is any substantial evidence that the crime charged may have been committed under circumstances which would reduce it from murder to manslaughter, it is the duty of the court to so instruct whether requested by the defendant or not. Applying the foregoing principle, we now turn to the issue of whether or not there was substantial evidence showing that the defendant was so intoxicated that he was unable to form the intent to commit murder. At

trial, Detective Leslie McCaleb testified that the defendant had the appearance of one who had been drinking above a normal amount, but that the defendant did not appear to be "stumbling drunk." The defendant, however, testified that he had not been drinking, except for one sip of whiskey with the deceased in an attempt to appease him. Based on the foregoing, we are of the opinion that the trial court did not err by failing to give an instruction on intoxication, because there was not substantial evidence to justify such an instruction.

Defendant's last assignment of error is that the cumulative effect of the aforementioned assignments of error had the result of denying him a fair trial. In *Lovell v. State*, Okl.Cr., 455 P.2d 735 (1969), this Court held in the fourth paragraph of the Syllabus that:

"When a review of the entire record reveals numerous irregularities that tend to prejudice the rights of defendant, and where a cumulation of said irregularities denies defendant a fair trial, the case will be reversed, even though one of said errors standing alone would not be ample to justify reversal."

After a careful examination of the record, we find that the test in *Lovell* has not been met. Therefore, it is ordered that said judgment and sentence shall be *AFFIRMED*.

CORNISH and BRETT, JJ., concur.